IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PAUL H. LEWIS and
SHEILA A. LEWIS                                                                 PLAINTIFFS

VERSUS                                                  CIVIL ACTION NO. 4:04CV193-P-B

UNITED STATES DEPARTMENT
OF AGRICULTURE                                                                    DEFENDANT

**MEMORANDUM OPINION**

This cause is before the Court on the plaintiffs' Motion for Summary Judgment [10-1] and the defendant's cross Motion for Summary Judgment [12-1]. The Court, having reviewed the motions, the responses, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

On February 11, 1987, Paul H. Lewis and Sheila A. Lewis entered into two loan agreements with the Farm Service Agency ("FSA"). Loan number 44-05 was a farm operating loan in the amount of $101,000.00 due and payable on January 1, 1988. Loan number 44-06 was a rescheduled loan in the amount of $72,591.38 due and payable in sixteen annual installments with the first installment due on January 1, 1988. Both loan agreements included the following default provision:

> **DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government <u>at its option</u> may declare all or any part of any such indebtedness immediately due and payable.

Exhibits A and B to Plaintiffs' Motion (emphasis added). Because of a recession in the catfish industry, the Lewises made no payments on either loan.

FSA sent the Lewises a Notification of Intent to Accelerate[1] loan number 44-06 on or about June 14, 1989. Exhibit D to Defendant's Motion. However, because FSA's asset investigation revealed no assets from which a judgment lien could be satisfied, FSA elected not to proceed with acceleration of the installment loan. Exhibit B to Defendant's Motion.

Much later, on or about October 8, 2003, FSA's Mississippi State Settlement Review Committee ("SSRC") met and recommended that the Lewises' FSA debt be classified as "Currently not Collectible" ("CNC") and certified to the United States Department of Treasury for offset of the debt pursuant to governing provisions of the United States Code. The Treasury Department, in turn, referred the debt to a private collection agency which contacted the borrowers on April 22, 2004.[2]

The Lewises responded by filing the instant lawsuit. They seek injunctive relief and a declaratory judgment that the applicable proscriptive periods provided for in 28 U.S.C. § 2415(a) and 31 U.S.C. § 3716(e)(1) have expired, thereby barring any collection efforts regarding the above-referenced loans.[3] The parties have filed cross motions for summary judgment. The motions have been fully briefed and are ripe for decision.

---

[1] This notice is identified in 7 C.F.R. § 1951-S as Attachment 9 to FmHA Instruction 1951-S.

[2] In addition to these recent collection efforts, in 1994 the government withheld payment of a federal income tax refund in the amount of $1,835.00 pursuant to the administrative offset provisions of 7 C.F.R. 1951.121-124.

[3] Defendant concedes that the limitations period has run as to the one year note, e.g., loan number 44-05. Accordingly, the Court will focus on plaintiffs' arguments regarding the installment loan agreement.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law,

. . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal

memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

LEGAL ANALYSIS

I. Applicable Statutes

Title 28, section § 2415 and Title 31, section 3716 of the United States Code are the governing statutes of limitation in this case. The first statute provides that actions for money damages brought by the United States "shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." 28 U.S.C. § 2415(a). Subsection (i) of the provision includes the following caveat: "The provisions of this section shall not prevent the United States or an officer or agency thereof from collecting any claim of the United States by means of administrative offset, in accordance with section 3716 of Title 31." 28 U.S.C. § 2415(i).

The administrative offset provision of 31 U.S.C. § 3716 utilizes a different proscriptive period. Subsection (e)(1) of the statute forbids the administrative offset of "a claim under this subchapter that has been outstanding for more than 10 years . . . ." 31 U.S.C. § 3716(e)(1). Title 31, section § 901.3 of the Code of Federal Regulations defines "outstanding" under § 3716 as synonymous with "accrue" under § 2415(a).

5

II.     Discussion

    A.      What Law Applies to the Accrual of FSA's Action Under § 2415(a)?

Plaintiffs' position is simple. They maintain that FSA's claims accrued, and the applicable statutes of limitations began to run, as to both loans when they failed to make their scheduled loan payments on January 1, 1988–regardless of whether the defendant exercised the optional acceleration provisions in the loan agreements.

In making their argument, plaintiffs rely on a pair of Fifth Circuit decisions which interpret and apply § 2415(a) in the context of suits brought by the FDIC under the aegis of FIRREA. SMS Financial, LLC v. ABCO Homes, Inc., 167 F.3d 235 (5th Cir. 1999); FDIC v. Belli, 981 F.2d 838 (5th Cir. 1993). In each of those cases, the Court of Appeals held that the cause of action accrued upon the debtor's default. Belli, 981 F.2d at 843 ("The FDIC's causes of action under the guarantees and promissory note accrued on or before August 8, 1983, the date the Bank demanded payment."). See also SMS, 167 F.3d at 241 ("[A] cause of action 'accrues' for the purposes of § 2415(a) when the debtor defaults . . . ."). The Lewises aver that the Belli and SMS decisions are clearly applicable and that § 2415(a)'s six year statute of limitations expired no later than January 1, 1994.[4]

---

[4] Plaintiffs cite to a decision out of the Southern District of Mississippi, Seward v. USDA, as persuasive authority for their position. 229 F. Supp.2d 557 (S.D. Miss. 2002). The Seward opinion suggests that FSA's right of action accrued as to the full amount of the loan upon delinquency.

> [T]he right of action accrues for purposes of [2415(a)] when a creditor is first able to assert a legal claim against a debtor for collection of the debt. That is when the debt becomes delinquent to the point that acceleration of the note is available or at the maturity thereof . . . . Once the note became delinquent the government had the right to accelerate the note and commence legal action thereof. It is the opinion of this Court that under Fifth Circuit case law not only did the government have that right, but it had the obligation to exercise that right.

6

The plaintiffs' interpretation of the Belli and SMS decisions fails to take into account the facts that informed the Court of Appeals' judgment in those cases. Belli involved the FDIC's suit on a demand note. Belli, 981 F.2d at 839. The question before the Court was whether the cause of action under § 2415(a) accrued upon the bank's demand for payment; or whether the statute of limitations began to run after the FDIC purchased the note in question. Id. at 840. Because the case involved a demand note, there was no question, as there is in this case, whether the limitations period began to run only as to a portion of the indebtedness. In SMS, the question before the Court was not when the cause of action accrued or for how much–the parties apparently agreed that the statute of limitations began to run as to the whole indebtedness on the maturation date of the loan. Instead, the Court was called upon to determine whether the plaintiff was entitled to claim the benefit of a tolling provision under § 2415(a).

Neither of those cases squarely addressed the issue before the Court in this case, e.g., whether the Lewises' failure to make the first scheduled installment payment on loan number 44-06 triggered the limitations period under § 2415(a) regardless of whether FSA exercised its right to accelerate the plaintiffs' loan? Those courts which have considered this issue have reached the opposite conclusion, holding instead that the outcome is dependent on whether the lender accelerates the loan.

> [I]f the acceleration clause in a note is optional, the debtor is not liable for payment on future nondelinquent installments "until the creditor chooses to take advantage of the clause and accelerate the balance. Unless the creditor exercises the option, the statute of limitations applies to each installment separately, and does not begin to run on any installment until it is due.

---

Id. at 569. However, the foregoing discussion is arguably mere dicta in light of the District Court's finding in an earlier portion of the opinion that FSA did, in fact, exercise its acceleration rights under the loan and that the claim was therefore time-barred even under the definition of accrual proposed by the government. Id. That finding disposed of the issue with no need for further analysis.

United States v. Dos Cabezas Corp., 995 F.2d 1486, 1490 (9th Cir. 1993) (quoting from 54 C.J.S. Limitation of Action § 153). See also United States v. Sather, 131 F. Supp. 2d 1146, 1153 (D.S.D. 2001); United States v. Nehl, 599 F. Supp. 324, 326 (D.S.D. 1984); United States v. Tilleraas, 538 F. Supp. 1, 4 (N.D. Ohio 1981). The reasoning of the cited cases is cogent and persuasive; therefore, the Court will apply that reasoning in the matter now pending.

      B.      Did FSA Accelerate Loan Number 44-06?

Plaintiffs raise the alternative argument that FSA accelerated loan number 44-06 by virtue of the June 13, 1989 Notification of Intent to Accelerate. Page two of the notice includes a statement to the effect that the Lewises were $87,267.45 behind in their loan payments. Based on the face amount of the loan and the delinquency amount shown on the notice, plaintiffs argue that it is clear that FSA accelerated the note in June 1989.

The government counters plaintiffs' contention by pointing out that FSA sent the June 1989 notice as part of its default loan servicing process in compliance with the mandate of 7 C.F.R. § 1951.907(f)(3). The government maintains that a different regulatory procedure, set forth in 7 C.F.R. § 1955.15(d)(2) governs the acceleration of loans. Title 7, section 1955.15(d)(2) of the Code of Federal Regulations requires that an acceleration notice, known as Exhibit D to Subpart A, be sent to the borrower by certified mail. FSA never sent such a notice to the Lewises.

Actions other than the notice provided for in 7 C.F.R. 1955.15(d)(2) may be sufficient to invoke an acceleration clause. Nehl, 599 F. Supp. at 326. However, "acceleration is seldom implied, and courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention and no doubt that the borrower is apprised that the option has been exercised." United States v. Feterl, 849 F.2d 354, 357 (8th Cir. 1988).

8

The notice required under 1955(d)(2) informs the addressee:

Subject: <u>NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARMERS HOME ADMINISTRATION AND DEMAND FOR PAYMENT OF THAT DEBT</u>

Dear _____:

PLEASE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption agreement(s) which evidence the loan(s) received by you . . . is now declared immediately due and payable . . . .

. . .

The indebtedness due is $_____ unpaid principal, and $\_\_\_\_\_ unpaid interest, as of _____, 19\_\_, plus additional interest accruing at the rate of $\_\_\_ per day thereafter . . . . Unless full payment of your indebtedness is received . . . within 30 days from the date of this letter, the United States will foreclose the above described security instrument(s) and to pursue any other available remedies.

Exhibit E. to the Defendant's Motion.[5]

By contrast, although the June 13, 1989 notice received by the Lewises states that "FmHA will accelerate your loan . . .", it also gives the defaulting borrower a number of servicing options including meeting with agency officials and/or the right to an appeal. Just above these options is a heading which reads **"Steps You Can Take Before FmHA Accelerates or Continues Acceleration of Your Loans**." Another portion of the letter bears the heading "**What Happens if You Do Not Respond?**; beneath that heading is the following statement: "If you do not respond to this notice . . . FmHA will accelerate or continue acceleration of any loans . . . ." By its very nature, the word "if" signifies a conditional statement is to follow. Review of the record evidence and the applicable regulations convinces the Court that the June 13, 1989 Notification of Intent to Accelerate was not sufficient to eradicate all doubts as to FSA's intention to accelerate the loan.

---

[5] FSA is the successor to former FmHA.

Because FSA never exercised its right to accelerate the Lewises' indebtedness under loan number 44-06, § 2415(a)'s six year statute of limitations applied to each installment separately as it became due. Likewise, the ten year statute of limitations for administrative offsets also applied to each installment as it became due.

C. The Statute of Limitations Has Not Run As to All Installments

Loan number 44-06 provided for annual installment payments over a period of sixteen years. The first payment was due on January 1, 1988; the last payment fell due on January 1, 2003. The six year statute of limitations applicable to suits for money damages provided for in § 2415(a) has expired with respect to those installments due between January 1, 1988 and January 1, 2000. The ten year statute of limitations for administrative offsets provided for in § 3716(e) has expired as to the annual installments due between January 1, 1988 and January 1996.[6]

CONCLUSION

Based on the foregoing facts and analysis, the Court concludes that the defendant's Motion for Summary Judgment [12-1] is well-taken and should be granted. The plaintiffs' motion [10-1] is well-taken and should be granted only as to loan number 44-05. A judgment will issue accordingly.

This the 15th day of February, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE

---

[6] The conclusions iterated herein are provided as of the date of entry of the instant opinion.